Mr. Curlin. Thank you, Your Honors. May it please the Court. We are asking the Court to reverse the decision below in this case because the Veterans Court interpreted Section 101E of the Veterans Benefits Act of 2003 in a manner that contradicts both the statute's and overwhelmingly expressed in the legislative history. Read straightforwardly, the statute clearly contemplates that individuals in Mrs. Frederick's position will be required to submit an application within one year after the law's enactment in order to reinstate their benefits for dependency and indemnity compensation. There are a variety of aspects of the statute that the Veterans Court below ignored and that Mrs. Frederick's and the Veterans Court interpretation has advocated on appeal in this case work extremely hard to either ignore or read out of the statute. Mr. Schoenhardt's going to tell us in a minute that Congress didn't use very clear window language like during or within. It instead just had this not later than reference which he will interpret as an end date statute rather than a window of opportunity. Can you address that choice of language? Yes. I think we'll get to maybe broader aspects of the statute further on in the argument, but it's worth noting as a placeholder here that that language obviously can be taken out of context and there is a lot more in the statute that Mr. Schoenhardt and Mrs. Frederick are reading out of the statute in order to achieve their interpretation. But just addressing that fact specifically, the not later than language clearly, particularly in conjunction with a forward-looking verb tense, that someone who is seeking to reinstate their benefits by reason of this new law that allows them to do so. Submits rather than submitted. Right. So, submits an application not later than. First of all, as we've said in our brief, Congress repeatedly has used the word not later than to define a forward-looking requirement. Yes, a closed period be, even leaving aside the question of a closed period, a forward-looking requirement for something to do something, a new application, something in the future. And looking at that issue of the verb tense, submits specifically, Mr. Schoenhardt has submitted this week additional material trying to suggest that by using that forward-looking verb tense, submits, Congress was potentially intending to actually include the passive with the Supreme Court in Carr called an omnitemporal construction. And even though the ordinary meaning of submits, both in ordinary grammar and in ordinary statutory construction is forward-looking, including under the Dictionary Act itself, Congress potentially could have meant when it used the word submits, actually have submitted or had submitted in support of that argument. Is it your understanding that your adversary's position is that because there was an application, as we all know, submitted a long, long time ago when she first qualified for DIC based on the veteran's death, she doesn't need to file another application of any sort. She could just call up and say, by the way, here's a copy of my marriage certificate. I got married. I was under 57 when I got married and I'm still married. That's certainly the implication of my understanding of what the Veterans' Court explicitly said in my understanding of... So without an actual application on the form, when that letter came in, the VA would have no way of knowing whether or not she had actually been married after the death of the veteran to somebody else and didn't get divorced and then married again. I mean, my point is that the application requires you to list all your marriages and why they were terminated. And it's not... I mean, I'm not trying to suggest that the human being here in question would be dishonest or something else, but people do get married and don't get divorced and they get married again. I mean, the jurisdictions don't police bigamy very badly, but I believe on the law of Tennessee, a bigamist marriage is void. And the broader point... Presumably, the VA would not consider a person who was bigamist to be entitled to DIC based on the marriage before the age of 57. If the marriage was no good. No. My point was that I couldn't... Looking at all these applications, it fascinated me that the application requires the person to be very, very careful. I got married in a bigamist and then some IDA was divorced. In this case, both of the husband and wife had been married once before and been divorced. That's fine. No problem. And one of the points we've made in our brief here is that Mrs. Frederick, the initial application that she's relying on is 1970, 33 years before the law passed when essentially this benefit did not exist in this form for people who had been remarried. She dropped off the rolls in 1986 and the VA simply does not track the type of information... And the statute doesn't say resubmit. I mean, you can argue all you want about whether it says submits or submit and what that means. But the word that's missing there is resubmit or file a new application different than the ones from before. It doesn't say anything like that. Okay. So let me continue addressing the issue of submit or submitted and wrap that up and then I'll go to the does the statute cover resubmit or reinstate. On the note of submitted, again, we have these legislative materials that Mrs. Frederick is seeking to suggest maybe Congress meant passive when it used prospective language. But there are three reasons that absolutely refute that. The first is that these materials and these arguments are precisely the arguments and compelling circumstances in Carr. Carr involved registration requirements under sex offender registration. These are the materials that were cited by Justice Alito in the dissent and the Supreme Court said, no, the ordinary meaning of prospective language is prospective, not retrospective, and it would be an extraordinary case. Second, the language of the statute itself absolutely refutes that argument. And in particular, I would direct the court to section 8. I thought that the supplemental authority that was submitted by your opponent, you know, I was dubious as to its authoritative value, but you really put it into play now. Okay, what you're telling us now really brings that supplemental submission into play because what your opponent has shown is that Senate drafters are instructed to draft in the present tense. So why shouldn't we find that that's what happened here? Because from the statute, it's clearly not what happened here, particularly if your honors look at section 701D of the Act. And this is just an example, I can list other provisions that are similar. Throughout this statute, Congress used passive tense verbs. Section 701D is a good example where it says this person had to have received or did not do this or had not done this. And not only that, but that same provision, section 701D, also contains a one-year filing requirement which uses the same submits language, the same not later than language, and later on in the statute equates that language, this is specifically 701D2 and subsection D2 and 4, essentially equates that not later than language with the word during. It says in the SHAFO kind of not later than, and then the subsection say if you don't submit the document during the period described above. And those are just examples. Other examples of either the passive language in the statute or the statute actually using not later than to define a closed period of time are in section 103, section 201, section 406. These are examples of passive language. Sections 601 and 602 use not later than to describe a prospective filing period where someone needs to And the last issue there is the subsection of the statute which the Veterans Court particularly relied on and in which Mrs. Frederick particularly relies on is section 101F. This was a section that involved a technical correction that fixed an internal inconsistency in a previous statute that accomplished a similar purpose. The key point there is that it was a technical correction to a statute that provided a closed filing, that already provided a closed filing period. Technical correction means that it did not, explicitly did not purport to change the substantive nature of that statute which did not permit a person in Mrs. to rely on a previous application in order to obtain the benefits. So not only does it not support the Veterans Court's erroneous decision, but it refutes the Veterans Court's and Mrs. Frederick's position here on appeal. To address the second issue of why doesn't the statute specifically stay, reinstate, or resubmit, as we've argued in our brief, the statute contains very broad language. It explicitly states, this is the first clause of the statute, that it applies in the case of an individual who, but for having remarried, would be eligible for benefits under Title 38 U.S. Code, which is the DIC provision, by reason of the amendment made by subsection A of the statute. That very broad language includes... It applies to both people who had DIC and who didn't. What's that? It basically applies to the universe of people. That's right. It includes a broad universe which includes people, if that primarily concerns people who are seeking to reinstate their benefits. That's right. There's somebody who actually married before 57, before the Act was enacted, but didn't ask for DIC, had never had DIC before. It would include that population as well. The erroneous interpretation the Veterans Court promulgated below said that this statute had to basically exclusively, either literally or effectively exclusively, apply to that hypothetical population of people who may have been eligible at some point, never applied, lost it as a result of remarriage, but then as a result of this statute would be applying for the first time. Do you want to save some of your rebuttal time, Mr. Carlin? I do, thank you, Your Honor, unless there are further questions. All right, thank you. Let's hear from Mr. Schoenhardt. Thank you, Chief Judge Rader, and may it please the Court, Mrs. Frederick does respectfully request that this Court affirm the Veterans Court judgment here, in large part, and perhaps entirely, because the clear and plain language of subsection 101E of the Veterans Benefits Act of 2003 does restore her eligibility to DIC benefits. But it says you're eligible only if the individual submits an application within the period. Respectfully, Your Honor, I disagree with your characterization. Nowhere actually uses the word within. No, it says no later than, but it says only if you submit an application no later than this date. That's correct, Your Honor, and not later than, the language not later than does, in fact, provide a deadline by which any applications that are going to be considered to operate to restore eligibility must have been submitted by that deadline. Mr. Carlin, the Court has said submits or has submitted. Yes, Your Honor, it could say submits or has submitted. But as the legislative drafting manuals of both the Senate and House of Representatives suggest, that's not the preferred way to, in fact, draft a statute. Especially whereas here, the context of the statute, and, in fact, each of the Supreme Court decisions cited by the Secretary, suggest that we look to the context of the statute. The context of the statute provides a deadline. Yes, that may be true with your ordinary rules, but the legislative history seems to be pretty darn clear that they were talking about a defined group, and they want them to submit an application within the year period. I understand, Your Honor. And if we are to look... You presumably are making a Scalia-like plain meaning interpretation of the statute, and we should ignore the legislative history. That's correct, Your Honor. If we are to look at the legislative history here, that is not helpful to my client. I recognize that. But whereas here, the unambiguous language of the statute operates in favor of my client, we should not, in fact, be looking to the legislative history. That's been made clear by the Supreme Court. That's been recognized and made clear by this Court. Here, we only need to look at the language to see that an application needs to be submitted prior to, not later than, a specific deadline. There is no window. The cases to which the Secretary cites for the proposition... Well, does it make any difference that what we're talking about here are entitlements that the Congress is creating, and the Congress is trying to have budgetary cost estimates of what the entitlements will be? So, for the Congress to behave responsibly in spending the taxpayers' money? I mean, the Congressional Budgeting Office here was looking at, defined both previously when the 55 was the age group, was looking at defined groups of people to try to predict how many people would step forward to claim this benefit. So they could put a dollar number on it to tell the Congress whether this was within reason. Understood, Your Honor. And, again, I believe there are two points here. First, so long as the language is clear and unambiguous, we still do not look to the legislative history, even if it directly contradicts... But it's not unambiguous, is it? You're asking us to read submits as if it includes submitted. And that's regarding a past tense reading of a present tense word. That sounds pretty ambiguous to me. You're asking us to go beyond the plain meaning to get where we need to go. And you're using a drafting manual concept in a setting in which, at least the legislative history, if not telling me what the statute means, the legislative history is telling me this is an unusual situation. That's what I meant by referring to the Congressional Budget Estimate, was they're saying this unusual situation here, we're looking at this defined group, whether or not we're talking about when the application has to be filed. I think I now have a couple questions stacked up, and I'll try to address each. First, as to the Congressional Budget Office Estimates, this court in Sharp v. United States has indicated that Congressional Budget Office Estimates are not controlling portions of legislative history. They may at times have some persuasive value. We've looked at them in other cases. We've looked at them in other cases. Yes, Your Honor, you have. But the Congressional Budget Office Estimates, standing alone, should not in any way trump the language here. Chief Justice Rader asked the question about submits. I would suggest that submits is not ambiguous as to its tense when viewed in the context of the statute, as required by the legislative drafting manuals, as required by the Supreme Court's decisions in Carr, Gwaltney, and Wilson, each of which is cited by the Secretary. In each of those cases, in which the present tense of terms was found to, in fact, imply forward-looking language. What do you do with the language in our Staub case, the 1991 case? The parties didn't refer to it, and I must say, since I wrote the opinion for the court, I remembered it. We had a case in which, I'm going to read from the opinion, since both parties claim victory on the face of the statute, we have no reluctance to examine the legislative history of the 10-year requirement in search of the correct answer to the question posed in this case. Now, I guess you're going to tell me that that was the Supreme Court law prohibited what we did in that case. But what I'm saying is, both sides here are claiming victory on the face of the language in the statute, aren't you? It would appear so, although it's unclear to me that the Secretary is consistently relying on the plain language of the statute. In each case, the Secretary tries to introduce language such as within and during, language that does not appear on the statute. I'm talking now about submits. I'm just hanging on the word submits. As to the word submits, it would appear... Submits look only forward from the date of the enactment or whether submits look backwards to 20, 30, 40, 50 years. Now, there's a dispute between the parties on that, correct? I believe so, Your Honor, yes. So, you think that doesn't entitle us to look at the legislative history? Your Honor, I cannot presume to suggest whether you're entitled to look at the legislative history, but I would suggest that simple disagreement between parties as to whether language is clear and unambiguous necessarily means that the language is in fact ambiguous, requiring and rendering appropriate reference to the legislative history. The reason I raised that, it was a Congressional Budget Office type case, and we said in that case we were worried because we were concerned that Congress intended to provide the benefits for pre-enactment circumstances to only a small known category of persons. Yes, Your Honor. That sort of fit to me what was going on here if you looked at the legislative history. And indeed, Your Honor, the Secretary has made repeated references in the Secretary's briefs as to the potential outlay a decision here could mean for the government. Although I suggest that in doing so, the Secretary is actually conflating two things. One, eligibility for benefits, and the other, an award of benefits. The Veterans Benefits Act of 2003 simply addressed the issue of eligibility. Contrary to the Secretary's characterization of Mrs. Frederick's argument, Mrs. Frederick does not suggest that all benefits must necessarily have been restored immediately upon enactment of the Veterans Benefits Act of 2003. The statute prohibits retroactive benefits, doesn't it? I recall in the Langdon statute. Yes, Your Honor. Also, again, I believe within Section 101 of the one of the subsections under 101 I believe. It's in the part that was not codified. Is that in our That would be in Section 101 D, Your Honor. Retroactive benefits prohibited. Yes. So there are no retroactive benefits. Yes, Your Honor. And here, Mrs. Frederick is not requesting benefits prior to the date of enactment of the statute. In fact, she hasn't even gone so far as to request benefits prior to the date on which she called up, as Your Honor put it, during the Secretary's argument, called up the VA and said, Hey, shouldn't my benefits be restored? The issue of effective date hasn't been dealt with at all. In fact, that was the subject of the remand back to the Board in the appeal below. A couple other things very briefly. The Secretary pointed to several other subsections of the Veterans Benefits Act of 2003 during the opening portion of argument today. I didn't manage to scribble all those down fast enough, but at least the first one that was listed that I heard was Subsection 701 D4. This is in the context of the issue of the not later than usage. I would point out that here, although not later than language is used in the context of the subsection, not later than provides a deadline just as it does  Other language provides a window. Specifically, 701 D4 uses the word during, the very type of word that is missing from Subsection 101 E that would provide context to suggest a limited one-year window within which applications should be submitted. One additional point that ought to be clarified, to the best of my knowledge, there is no such thing as an application for reinstatement. Reinstatement of dependency and indemnity compensation benefits is consistently granted upon informal request of surviving spouses either in circumstances in which circumstances have changed either the death or divorce of a subsequent spouse or, for example, a change in the law as here. Informal requests for reinstatement are not the same as applications. Indeed, in the Secretary's regulations dealing with informal claims you'll note that 38 CFR 3.155A deals with informal claims for benefits generally where the informal claim is clearly intended to apply for benefits whereas 3.155C the subsection that would be an issue in a reinstatement circumstance simply reflects a request for reinstated or increased benefits. There is no reference to apply or application there. When you reinstate then, you're actually looking you're accepting the qualifications that were in the eligibility that were initially stated in the initial application. Yes, Your Honor. You are, during the reinstatement process, you're looking back to the original application. In her original application, she wasn't entitled at the time she filed it. Under her original application, she was entitled and did receive... She's using it as entitlement now for the fact that she remarried before she was 57. That's the entitlement that didn't exist before this statute got passed. Before she got passed, you know, it wouldn't work, right? If someone had no entitlement at all. Your Honor, I think that we're smushing two issues together. She was indeed eligible for and did receive DIC benefits based on her original application until they were terminated based upon her remarriage at the age of 57. Yes, that is correct. Since she remarried at the age of 57 at that time, she was not entitled to the benefits. She was no longer entitled to the benefits at that time based on her remarriage. That's correct. So the purpose here was to remove the impediment posed by remarriage for CID benefits. That's really what the statute does here. Correct, Your Honor. On a go-forward basis, it eliminates the concern folks over the age of 57 may have with respect to remarrying and it also included provisions that issue here to restore benefits to individuals. And doing so recognizes these are individuals that were eligible before or were someone that weren't, but mostly the ones that were, and it restores those benefits. Okay. Sorry. It restores the eligibility for those benefits. And if a surviving spouse were to actually look to then start receiving payments once again, the typical procedure would be to either call up the VA, send a quick letter, something of that nature saying, hey, it appears that I'm eligible. But the statute is creating an entitlement to a new class of people because before the statute was enacted, if you'd been married to a veteran and your veteran died, you were entitled to DIC. If you remarried at whatever age, you lost. Once you remarried, you didn't remarry another veteran who then died. Even under the prior statute, even prior to the Veterans Benefits Act of 2003, if a surviving spouse remarried, you are correct at any age, benefits would be terminated. That does not mean that the surviving spouse is completely out of the purview of the VA. If that subsequent marriage were to be terminated by death or divorce, the surviving spouse could once again be eligible and reinstatement would not require a new application. Reinstatement would simply require a call or a letter, some form of informal contact to the VA saying, hey, let's reinstate. Let's look to my original application, everything that's developed there. I will explain to you why the circumstances have changed. It could be death or divorce, whereas here it could be change of law. In this case, what I was trying to get at was a situation of someone who remarries before they're 57 years old. That didn't do you any good at all before the statute got enacted. Correct, Your Honor. The whole purpose behind the statute was to say we don't want to have an impediment to middle-aged wives of veterans who are deceased to stop them from remarrying and have a stable life. Agreed, Your Honor. It's that entitlement that your client is trying to grasp onto. In part, Your Honor. Entirely, because that's it. The reason why your client claims benefit is that she remarried before the age of 57. That's correct, Your Honor, but the statute does expressly account for folks who remarried prior to enactment of the Veterans Benefits Act of 2003. There may be good and sound reason for that. For instance, you don't want people in Mrs. Frederick's position to divorce their spouses, which would restore their entitlement to DIC, only to remarry them, which again would maintain their entitlement under the Veterans Benefits Act of 2003. That would be nonsensical. There's good reason to offer these benefits. I recognize I believe I was out of time, Chief Judge. I appreciate you restoring some, but if there are no further questions from the panel, I respectfully request adjournment. Thank you, Mr. Sheinhardt and Mr. Kerland. Your Honor, a few brief points, and I'll try to go through them quickly since I know we're running short on time. First of all, Mr. Sheinhardt's mistaken. If one is seeking to reapply for benefits as a result of a divorce or annulment, Section 5110 K and L and the regs require a new application or claim. It can be an informal claim, but you certainly have to file an application. Is there a new form? There's no new form, but VA accepts informal claims. You would not have to file a formal application. It's just a normal claim. But would you do that in cases where you have an individual that never filed one to begin with? If someone had never filed for DIC in their life, they would have to file an application. But Mrs. Frederick in this instance... Where in the statute does it say that? Where does it create the difference between those two classes of individuals? The statute requires an application for benefits of any kind. I believe that's 5110 A. Under K and L, which deals specifically with divorces and annulments and deaths of a spouse, and the VA's regulation, which is 3155 A, it permits informal claims in those situations if there's been a previous application. So, just to be clear, if a woman has never filed an application before and she realized she went through this process and her husband died or she remarries and now she's going to seek DIC for the first time, she has to file an application. The formal, long application. Is that right or not? If she has to file that application and you have another individual that's already filed that same application before, why do you force the second person to re-file that same application or to re-qualify? Because in this case, Congress in Section 101E provided a specific requirement that says, and this gets to the context point, it's not just about Smith. The statute says in context, someone who is seeking to have benefits by reason of the amendment that we're making in this law. If you want to have your benefits reinstated because of this new law, you can only do so if you submit an application not later than one year after the enactment of this law. I'm sorry, not even one year later. Not later than the end of the one year period beginning on the date of enactment of this law. And so, going back to the context of the statute, the context is we are talking about someone who is seeking to reinstate their benefits having to submit this application. All of these aspects, the forward-looking verb tense, the not later than, which frequently equates to forward-looking. The fact that it says a one year period with the beginning and again the overall context of this law, which... I have one question. This one year period has now expired. What is the size of the class that Ms. Frederick would represent? How many people are there that would be in her situation having remarried before 57 and seeking reinstatement? I don't... VA does not have the information on that. I can point to the CBO estimates which state that without a requirement, thousands more. One final point, Your Honor, which is that this Court and the Supreme Court have frequently looked to legislative history as part of looking into a statute's context. There are a variety of cases that the party has decided on this. That includes Swanson, California Industrial Products, Bennett and Timex. The Court goes to legislative history first, considers it as part of a statute's context and policy. Here it would be totally inconsistent and unfair to look at a legislative drafting manual and other sources which indirectly address this issue as opposed to the legislative history which directly addresses this question and answers it. For those reasons, we request that this Court reverse the erroneous decision below and rule in the government's favor. Thank you, Mr. Colonel. All rise.